Okay, the next case on calendar is McNeil. They don't believe us. We're on time. Yeah, that's, you know, we always like to rattle counsel. Sorry, we did come back right on time. So we'll give you the benefit for sure. OK, the next case. Everybody here. And we got everybody here. Oh, I say, well, you fake me out. We'll go see if we can get them. Yeah. Tell me. That's all right. We are ready. McNeil v. Lone Star Fund. Yes. Good morning, Your Honors. My name is, may it please the Court. My name is Salva Nosbahar, and I'm counsel for the plaintiffs. We're here today on an order dismissing plaintiff's complaint with prejudice under Rule 12b-6. The crux of the plaintiff's argument in this case is simple. Plaintiffs had a contract with Lone Star to sell their tendered shares. This contract was formed at the moment when plaintiffs tendered their shares in response to Lone Star's tender offer. In fact, the documents in this case cannot be more clear on this point. And if you look at the offer to purchase, it states, and I'm quoting, tender constitutes an agreement, and that language appears in bold and in italics. The letter of transmittal states, tender of shares will constitute a binding agreement. Now, admittedly, the contract that was formed between the plaintiffs and Lone Star was subject to conditions subsequent, which meant that Lone Star's duty to perform under the contract, which in this case would have been to pay for the tendered shares, would not become right or enforceable until the conditions were satisfied. The plaintiffs have alleged that the conditions were satisfied, and therefore when Lone Star refused to pay for the tendered shares, it gave rise to a breach of contract. Well, what do you do with the fact that Assured could agree to a lower price? I'm sorry. Who could agree to a lower price? The company being acquired could agree to a lower price. Your Honor, the contract that was formed between the plaintiffs and Lone Star was subject to the terms that were set forth in the offer and the letter of transmittal. And if you look at the offer, it only talks about lowering the price in one circumstance, in one provision. And that provision talks about Lone Star being able to lower the price with the written consent of the company. Now, once a contract is formed, basic contract law tells us you cannot change its terms. Well, wait a minute. You just said there's a condition subsequent, and it said that they could reduce, they would not reduce the share price tender offer without the consent of the target company, right? Your Honor, let me be more clear. I did not mean to say that, certainly if that's the impression I got. The conditions for the offer are set forth in one place, and they're in Section 13. Section 13, which is at page, let me refer you to the exact page in the record, makes, as I'm looking for that site, Section 13 makes no reference to lowering the price. If you look at all the conditions set forth in Section 13, and that's at 281 in the record, there is no mention of the ability to lower the price. The provision that relates to lowering the price is set forth at 247. That is not a condition subsequent under the contract. And when you look at the language at 247, it simply states with the written consent of the company, Lone Star could lower the price. But once you have a contract formed, and the contract is formed at the moment of tender, basic contract law tells us you cannot change its terms. And the only condition subsequent that would allow Lone Star to have a way out here are those set forth in Section 13. And I would submit to the Court that all of those will rely on factual determinations that cannot be made on a motion to dismiss. And that dispute will have to go. Judge, I have a question for you. The provision about lowering the price, what agreement was that in? That is set forth at page 247, and that's in the offer. But it is, when you look at the terms, when you look at, let's see, let me be very specific here. The tender offer at numerous places, and I will give you the page sites, 237, 281, 282, 245, 246, says the terms, this offer is subject to the condition set forth in Section 13. Section 13, again, is set forth at 281. Nowhere in 281 does it make reference to the ability to lower the price. And so the only condition. Okay. But it's not, maybe it's not a condition in that sense. But, I mean, under standard contract law, if it's part of the offer, could the contract that's formed be reasonably interpreted to include that as a provision of the contract? Your Honor, it is certainly a provision in the offer. The offer says that we can reduce the price if we have the prior written consent of the company. But the offer also says that upon tender, you've created a contract. And that contract is only subject to the condition subsequent set forth in Section 13. Well, now, wait a minute. That's, I mean, there may be disputed issues of fact under whether certain conditions are met. But contract interpretation is a question of law. Okay. So. Correct. At least on the plain language. So I just want to make sure I understand. The offer that you say was accepted is an offer that says it's conditioned upon, excuse me, the offer is subject to applicable withholding taxes upon the terms and subject to the conditions set forth in this offer to purchase and in the related letter of transmittal. Correct. And then it goes. So then one goes to the terms of the offer. And the terms of the offer begin at 246, as I understand it. Isn't that correct? And it runs over onto 247. And it says certain conditions of the offer to purchase. In addition, we will not, without the prior written consent of the company, change or waive the minimum tender condition, decrease the number of shares we seek to purchase in the offer, reduce the offer price. I mean, that's right on the face of it, part of the offer. So when your clients accept whatever they did by tendering their shares, whether or not the contract was formed then, or let's assume it was at that point formed, it was on the face of an offer that included this opportunity of the company and the acquirer to modify the purchase price, the stock price. Your Honor, my interpretation of that language is that the offer price could be changed if you had the prior written consent of the company up until the time that the offer converts into an agreement. The offer. Why does it say that? Your Honor, the offer makes a clear distinction between offer and agreement. In two places in the offer, it talks about how once you tender, you have an agreement. It is no longer an offer anymore. It is an agreement. And that agreement is subject to general contract law. And general contract law is you can't change the terms of an agreement after you've already consented to it. And that's within your agreement. You have agreed that the terms can be modified. And here, you've entered into an agreement subject to the conditions subsequent in Section 13, which make no reference to the ability of Loan Star to alter the price. And factually, there is no dispute that at the moment that the agreement was formed and at the moment that we believe a breach occurred, there was no prior written consent by the company to have the offer price reduced. And we know that because there was a lawsuit immediately. And so that's our reading of that provision. Okay. Got it. Counsel, a practical question that's on my mind. As I understand it, under the tender offer, the shareholders after tendering could have withdrawn their shares. Assuming for a minute that the 1175 price could be changed, they could have withdrawn their shares, right? It could have. If they didn't want to sell at that price, they had the power to withdraw their shares. Your Honor, just one point of clarification. The price at which we claim we're owed, it's 1510, 1175. Oh, I understand that. But when your guys tendered, the price was 1510. Then the company agrees that they acquire to change the price to 1175. And we have a contract dispute whether the tender offer contract on acceptance includes that permissible change or not, based on your argument and the kind of questions posed by Judge Fisher as to whether that change is part of the tender offer contract. But assuming it is part of the contract, I'm understanding that the shareholders could withdraw their tender if they wanted to. Your Honor, our position in this lawsuit is premised on the ---- Could they have withdrawn their tender? And I'm attempting to respond to that. Well, answer a yes or no. Well, they could have. But when you have a contract, you don't have to. You have a contract which, you know, you can tender. Counsel, you're looking too far ahead. Just answer the question. The question is, did they have the opportunity, the right to withdraw? If they didn't like the price, they could withdraw. If they wanted to abandon their contractual rights, yes. Yes. Okay. That's all the question was. But our position is that they had a contract for a higher price. We understand. We understand. Okay. You're over time. So I'll give you a minute for rebuttal. Okay. I think I have left a minute. No, you don't. Oh, it went back up again. Okay. As I told you, it goes up. Yeah. But you have to kind of watch it to know that. Yes, you do. That's why I said it at the outset. Got to read the fine print. Good morning, Your Honor. Robert Sachs from Sullivan and Cromwell for the defendants and appellees. The contract that has been allowed ---- Counsel, let's just go with a question. At some time during your argument, could you tell me if there's any precedent that you can point to where a change of price provision like this has been held to be part of the agreement formed when the tender was accepted, when the tender offer was accepted by tender of shares? Well, I'll address that now, Your Honor. I don't believe this case in this form has ever been litigated, but I don't believe that an offer was accepted by the tender of the ---- the mere tender of the shares. And I'd like to address that because the offer here is controlled by the terms of the offer to purchase. The contract that's being alleged here is alleged to have been a binding contract where both the purchaser is obligated to buy and the seller is obligated to sell on specific terms, i.e., $15.10 upon the tender of shares. That is not an offer that was made in the offer to purchase that could be accepted by the tender of shares in this manner. And it doesn't matter whether you want to analyze this as a contract or as an obligation. It really doesn't matter. But there is no obligation to purchase these shares under the express terms that were written here until such time as they are accepted for payment. The offer to purchase is expressly made pursuant to and subject to the conditions of the merger agreement, which is summarized in the offer to purchase and incorporated by reference in whole in the offer to purchase. The offer to purchase makes clear that ---- and read in full the section that my opposing counsel referenced. It says, Where are you reading from? I'm reading 251 of the excerpt of the record. Opposing counsel referenced the first three words of that paragraph. Your Honor, Tooley, which is a Delaware Supreme Court case, is dispositive of the issue here. This is Delaware Corporation. This is Delaware law. Tooley, coupled with the Federal laws governing tender offers. In that particular case, the plaintiff, like the plaintiff here, argued that it had a right to enforce a tender offer under terms because the two parties to the merger agreement agreed to extend the tender offer. That was one of the conditions set forth in the merger agreement and the offer to purchase, i.e., the parties could agree to extend the tender offer. The shareholders sued, saying they were damaged. They lost time value of money because of that. The Delaware Supreme Court said two things that are important. One, until such time as under the terms of the offer to purchase, shares were accepted for payment. The shareholder had no right, no enforceable expectation, no obligation to receive payment. And two, prior to that time where the parties, the two corporations, had entered into an agreement, any claim that arose for a dispute over whether they had the right to enforce conditions under the merger agreement and so forth was a corporate claim, not a claim that shareholders even had a right to enforce individually. Those same principles are applicable here as well. To the extent they are claiming that there was an enforceable agreement or that they had a right to payment upon tendering of the shares and that this is a dispute over whether conditions in the merger agreement were or were not met, that's a right that this company, not these shareholders, have a right to litigate. That right was, in fact, litigated. It was litigated. I was involved in that litigation. It was litigated extensively. It was litigated in Delaware. And at the end of the day, that litigation was settled. Our client's claim, Lone Star's claim, was it had no obligation to buy any shares because there had been a breach of the merger agreement. Accredited's position was Lone Star breached the merger agreement and had an obligation to proceed. The parties amended the merger agreement. The only document that governs in this particular case that plaintiffs are entitled to 1510, 1175, or 5 cents is the merger agreement. The offer is made expressly conditioned upon the terms of the merger agreement, and the offer on its face says the terms of the merger agreement as they exist now and as they may be amended in the future. That's also on the face of the document. So if you looked at the offer that was made, this was not an offer. Let me give an analogy, Your Honor. Where's the merger agreement incorporation? The merger agreement is incorporated in several places. 266 refers to the fact the merger agreement is summarized in the offer to purchase and the whole merger agreement is incorporated by reference. That's 266. Offer being made pursuant to the agreement plan of merger, 237, 245. The merger agreement itself, which is incorporated by reference, provides that the offer is being conducted on the terms of Section 1. Where's the incorporation by reference? 266, Your Honor, of the excerpts of the record. I haven't looked at this for a while. All right. Go ahead. Okay. If you look at the ‑‑ let me give you an analogy. If I made an offer that said if somebody comes to Courtroom 1 on Mother's Day with a red rose pursuant to an agreement that I've made with Judge Fletcher, I will pay $5. And I make that offer today and tomorrow morning. Somebody comes to Courtroom 1 with a red rose and sits here. And sits here today. And then on Saturday, Judge Fletcher and I decide to amend our agreement. We say, you know, come back on Father's Day. They don't have a claim that I was obligated to pay them $5 for that red rose on Mother's Day because the offer is ‑‑ they didn't accept it by the fact that they tendered their shares today. That's not acceptance. It required that we would be obligated to pay for that rose subject to the conditions of an agreement that you and I met on a date served. It's no different in the tender offer situation. Tender offer is a complicated corporate transaction. It's made pursuant to an extensive written agreement. It has a lot of terms and conditions. And one of them, the one that was referenced earlier, is the parties to the merger agreement can change the terms of that offer. It's on the face of the offer to purchase. Everyone knew it was subject to amendment by the parties. The parties to this merger agreement amended the merger agreement. They could have amended it to terminate it. The agreement, the offer to purchase says the parties can amend the merger agreement and abandon the transaction. They had no binding expectancy. The fact that they tendered their shares on day one or day two or day three or day five is irrelevant. The only thing that matters is did they tender their shares at the time the tender offer is closing. And once we close the tender offer and accept shares for payment, then they have a binding entitlement to sue for payment at that point in time. But unless and until that time and event happens, they have nothing other than they are tendering shares, offering to sell those shares, subject to the terms and conditions of the offer, which is based upon the merger agreement and can be changed at any time. Governing Federal law can't be ignored because what they are alleging is a binding agreement. It has to be mutual. They would have had to have an obligation to sell. The Federal rules governing tender offers do not permit that. The Williams Act, Section 14D – I'm sorry. Rule 14d7 gives shareholders an absolute right at any time up until the close of the offer to withdraw their shares. They were never bound to sell their shares just as we were never bound to buy those shares up until the time the tender offer closed. Unless Your Honors have any other questions, I think I'll sit down at this point. Thank you. I'm going to speak quickly to try to address some of the points made here. The first point I'd like to address is the question of whether the terms of the merger agreement were incorporated into the offer. And nowhere does the offer to purchase state that it incorporates the terms of the merger agreement into the actual terms of the offer. And the only – the citation that was provided by counsel, page 266, draws from where in the offer they summarize the terms of the merger. And they say, this is a summary. We incorporate the remaining terms. This is a summary. I refer this Court to the discussion in the case of N. Ray Gulf, which was cited by Lone Star, where the Court engages in a lengthy discussion about how the SEC regulations require that a summary of the merger agreement be placed into the offer to purchase and goes on to conclude that those terms of the merger agreement do not thereby become the terms of the offer. And I would cite to the cases at 725 FSUP 712. It's a very long case. This discussion is at 730 to 731.  And it's a very long case. As I stated earlier, the offer to purchase is subject to terms set forth in the offer and the letter of transmittal. And the cites for that are 219, 245, 246. Kennedy. Why don't you look at 251 and explain your reading of the tender conditions constitute – tender constitutes an agreement?  The line that our opponents have relied on, Your Honor? Our acceptance for payment of shares tendered. Okay. That, of course, appears at the end of the paragraph that starts with tender constitutes an agreement. Our understanding of that last sentence is, again, consistent with contract law, that when you have a contract which is subject to conditions subsequent, the contract effectively does not become binding or enforceable until the conditions have been satisfied. And that's how we read that final sentence to make it work with the first sentence. And we think it's a coherent interpretation. Okay. Your time is up. Thank you. Thank you, Your Honor. We've read the brief. Okay. The case just argued is submitted. We thank counsel for argument. Next case on calendar is Doe v. Wal-Mart.
judges: Fletcher B. , Fisher, Gould